CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

DEC 20 2007

JOHN F CORCORAN, CLERK
BY: K Botsun
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| RONALD SAMUEL JACKSON, | ) | Case No. 7:07cv00191 |
|  | ) |  |
| *Petitioner*, | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
|  | ) |  |
| UNITED STATES OF AMERICA | ) | By:   Hon. James G. Welsh |
|  | ) |         U. S. Magistrate Judge |
| *Respondent*, | ) |  |
|  | ) |  |
|  | ) |  |

This action was instituted by the petitioner, Ronald Samuel Jackson, on April 16, 2007 pursuant to 28 U.S.C. § 2255. Styled as a "Motion . . . to Vacate, Set Aside, or Correct" his federal sentence of two hundred forty months, Mr. Jackson alleges that his sentence was unconstitutionally enhanced and that he was provided constitutionally ineffective assistance of counsel.

In response, the United States moved to dismiss. Addressing the petitioner's first challenge, the government argued that the enhanced punishment imposed on the petitioner met the statutory and procedural requirements of 21 U.S.C. § 851 and that any claim of a sentencing error was not raised on direct appeal and was, therefore, barred. Relying principally on *Sanchez-Llamas v. Oregon*, ___ U.S. ___, 125 S.Ct. 2669 (2006), the presiding district judge dismissed the petitioner's claim that he received any unconstitutionally enhanced sentence. In his memorandum opinion the presiding district judge concluded that the petitioner had neither demonstrated a cognizable "cause" for his failure to raise this claim on direct appeal nor demonstrated the required "prejudice" as a result of this failure.

In the memorandum filed in support of Mr. Jackson's petition, two factual bases were asserted in support of his claim that he had received constitutionally defective assistance of counsel. First, the petitioner contended that his sentence was illegally enhanced as a consequence of his attorney's failure to object to the lack of a 28 U.S.C. § 851(b) colloquy[1] at the time of sentencing. Second, the petitioner contended that his attorney gave his constitutionally defective advice regarding the consequences of entering a guilty plea.

Finding that notice of the government's intention to seek an enhanced sentence had been "ample," that the requisite evidence had been introduced upon which to base the enhanced sentence and that no prejudice[2] had been demonstrated by the petitioner, his claim of ineffective assistance of counsel during the sentencing phase was dismissed by the presiding district judge.

Addressing the other defective assistance of counsel claim, the government submitted an affidavit from the petitioner's trial attorney in which he directly contradicted the allegation that he had given constitutionally defective advice regarding the consequences of the entry of a guilty plea. "In light of [Mr.] Jackson's allegation and his trial counsel's conflicting affidavit," the presiding district judge determined that the record, as it then existed, was inadequate and referred to the undersigned

---

[1] In pertinent part 21 U.S.C. § 851(b) provides, "If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."

[2] As the district judge noted in his Memorandum Opinion, "to prove that counsel's assistance at trial was so defective as to require reversal of his conviction, petitioner must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984)."

for an evidentiary hearing on this claim. *See Raines v United States*, 423 F.2$^d$ 526, 529 (4th Cir. 1970) ("Unless it is clear from the pleadings and the files and records that the prisoner is not entitled to relief, [28 U.S.C. § 2255] makes a[n evidentiary] hearing mandatory.").

Pursuant to the Order entered on September 6, 2007 referring this matter for a report and recommended disposition, pursuant to 28 U.S,C, § 636(b)(1)(B), an evidentiary hearing was held on November 26, 2007. The petitioner was present in person and by his appointed counsel, Frederick T. Heblick, Jr., Assistant Federal Public Defender. The United States was represented by William F. Gould, Assistant United States Attorney.

After reviewing the pleadings and papers filed in this matter, after hearing the evidence and views of counsel and after mature consideration, the undersigned has concluded that there is no credible evidence to suggest that the petitioner's trial counsel gave erroneous advice that resulted in the petitioner's not guilty plea being either unintelligent or involuntary.

**Factual and Procedural Background**

Ronald Samuel Jackson, was indicted on September 2, 2003 on a charge of participating in a criminal conspiracy to distribute and possess with intent to distribute in excess of fifty (50) grams of "crack" cocaine in the Western Judicial District of Virginia. Timothy S. Coyne, then a CJA panel attorney was appointed to represent Mr. Jackson, and on January 6, 2004 the petitioner was arraigned and entered a plea of not guilty to the charge. The case was initially set for a jury trial beginning

3

March 1, 2004. The trial was later continued until May 5, 2004. On April 29, 2004, the government filed a timely 21 U.S.C. § 851 notice that Mr. Jackson, if convicted, was subject to enhanced penalties due to a prior felony drug conviction.

On May 7, 2004, following a two-day jury trial, Mr. Jackson was found guilty of the charged offense. After preparation of a presentence report, a sentencing hearing was held on December 1, 2004. At the conclusion of which, the court entered judgment on the verdict and imposed an enhanced sentence of two hundred forty (240) months pursuant to 21 U.S.C. § 841(b).

A timely notice of appeal was subsequently filed on December 7, 2004, and on February 7, 2006 the Fourth Circuit Court of Appeals affirmed Mr. Jackson's conviction and sentence. His requests for rehearing and for a rehearing *en banc* were denied by the Fourth Circuit, and its February 7, 2006 judgment took effect on March 15, 2006.

## Evidentiary Hearing

### A.

At the evidentiary hearing the petitioner testified that he first met with his court-assigned counsel on December 31, 2003 at Mr. Timothy Coyne's office in Winchester. He stated that Mr. Coyne told him that he was facing a ten-year to life sentence and that he (Mr. Coyne) had not received all of the paperwork concerning the charge. Mr. Jackson stated that he remembered telling Mr. Coyne during this initial meeting that he had a prior drug distribution conviction and that Mr. Coyne told him

4

that this prior conviction "might [put him] into a different [sentencing] category" and its impact would have to be determined at a later time.

During this initial meeting, Mr. Jackson testified that he told his attorney that he wanted to plead guilty, and was told that he would have to be able to name names and "give the government something." He stated that he asked Mr. Coyne what his "best route" was and about the possibility of "a deal." According to the petitioner, he was told that "there was no such thing as a deal" in federal court. When he left this initial meeting, it was the petitioner's "feeling" that he would be going to trial unless he had information wanted by the government.

Mr. Jackson testified that his second meeting with his attorney was a "discovery meeting" on January 30, 2004. On that occasion, he was shown and reviewed "about five hundred pages" of material, including police reports, laboratory reports, and statements by several co-defendants. During this meeting, Mr. Jackson and his attorney discussed what redacted information he could "fill-in," how the co-defendants' statements impacted his case, potential defenses, and the possible filing of a suppression motion. According to the petitioner, the letter (plaintiff's exhibit no.1) [3] he received approximately two weeks later from Mr. Coyne fairly summarized this meeting.

Along with his knowledge that the other defendant's were going to plead guilty and testify against him, Mr. Jackson "interpreted" his receipt of a copy of the discovery materials in mid-March

---

[3] A copy of this exhibit and all other exhibits introduced into evidence at the evidentiary hearing are incorporated in this report and recommendation by reference.

5

2004 to be a reconfirmation that his case would be going to trial. In a similar vain, when he met with his attorney and Mr. Isaac Wright (a paralegal and a family friend) in Woodbridge several days before the trial date, all of their discussions were about going to trial.[4] According to the petitioner, he fully understood the potential sentencing impact of an "851 filing", and if he had known about any possibility of pleading guilty without being exposed to the Section 851 enhanced penalty, he would have "definitely pleaded guilty."

On cross-examination, the petitioner's continuing denial of any involvement in the conspiracy, however, was reaffirmed. He admitted that he told the probation officer, during the presentence interview, that he had not participated in the conspiracy and that on the incident date he had known nothing about any drugs in the vehicle until "Ty" [Calvin Tyrone Smith, an indicted co-conspirator] told him to throw them out the window. In response to further questioning by the Assistant United States Attorney, the petitioner also denied that he ever provided any co-defendant with drugs. He denied ever selling any drugs between the time of his arrest in Pennsylvania in connection with his 1993 or 1994 conviction and the incident giving rise to his 2004 conspiracy conviction. He admitted to knowing only of a "possibility" that others in the car on the incident date were involved in illegal drug sales. He conceded that before trial he told Mr. Coyne nothing different from what he told the probation officer after the trial, and he again stated that his only wrongdoing was throwing the drugs out the window in response to Ty Smith's instruction.

---

[4] In the April 29, 2004 e-mail (plaintiff's exhibit no.2) the petitioner's trial attorney informed Mr. Wright of the government's impending filing of a notice that it would seek an enhanced penalty, and therein counsel also inquired about "any chance of a plea." At the hearing the petitioner denied that he was either apprised of the content of this e-mail or that it was discussed when the three met for approximately seven hours in Woodbridge on May 3, 2004.

6

Irrespective of these denials, the petitioner reaffirmed under oath the unequivocal statement in his memorandum (government's exhibit no.2) that long prior to trial ("from early on") it was his intention to plead guilty to the conspiracy charge.

**B.**

After outlining his legal training, his significant state and federal court criminal defense experience between 1991 and 2004 and vouching the content of his affidavit (government's exhibit no.1), Timothy S. Coyne, currently the Winchester-Frederick County Public Defender, testified in some detail about his representation of the petitioner. *Inter alia*, he stated that he never told Mr. Jackson, nor had he every told anyone else, that they could plead guilty only if they testified. He stated that the petitioner always maintained that he was innocent, and that Mr. Jackson's basic factual contention[5] never changed between the date they met with him on December 31, 2003 and the date of their post-trial meeting with the probation officer in May 2004.

Pursuant to a number of questions by the Assistant United States Attorney, Mr. Coyne outlined his four face-to-face meetings with the petitioner.

Their first meeting was on December 31, 2003; it was at Mr. Coyne's office in Winchester, and it lasted approximately two hours. During this meeting the contents of the indictment, the elements of a conspiracy charge, the minimum mandatory sentence, the applicability of the federal Sentencing Guidelines, and the option of pleading guilty were all reviewed and discussed with the

---

[5] According to his trial counsel, the petitioner's position "from our first meeting" to his presentence meeting with the probation officer was that he did no more than throw a package of drugs out the car window that "Ty had handed to him."

7

petitioner. He informed Mr. Jackson of the scheduled arraignment date, and he was told unequivocally by Mr. Jackson that he was not involved in any drug distribution conspiracy. Mr. Coyne stated that he had no recollection of any discussion of a "deal" at this initial meeting; instead, it was his clear recollection that the petitioner categorically asserted his innocence.

Mr. Jackson's second meeting with his attorney was on January 30, 2004 and was also in Winchester. On that occasion, according to Mr. Coyne, they discussed the government's evidence, the plea agreement process, and the "substantial assistance" process. This meeting lasted approximately one and one-half hours and it, along with related telephone calls, were summarized in counsel's February 12, 2004 letter (plaintiff's exhibit no.1). According to Mr. Coyne, the petitioner continued to maintain that he was innocent of the charge and never suggested any desire to plead guilty.

On April 23, 2004 they had a pretrial meeting in Harrisonburg which lasting between one-half and one hour, and they had a "lengthy trial preparation meeting in Woodbridge on May 3, 2004. At none of these meetings was the option of pleading guilty substantively discussed, and the petitioner never gave any indication that he would consider pleading guilty. Similarly, when he informed the petitioner in a telephone call on April 30, 2004 about the impact of the government's "851 filing," the petitioner gave no indication that he was interested in pleading guilty.

As Mr. Coyne noted during cross-examination, he had been instructed by Mr. Jackson "to run everything through Mr. Wright." It was for that reason, he sent the April 29, 2004 e-mail (plaintiff's

8

exhibit no.2) to Mr. Wright and not to the petitioner. On cross-examination Mr. Coyne was also shown copies of two telephone messages, one dated April 8, 2004 and the other dated April 20, 2004 (plaintiff's exhibit no.3 and no.4 respectively) from counsel for the government. The second of these messages informed Mr. Coyne that one Vernon Dixon, a co-defendant charged in the conspiracy, had agreed to plead guilty. This message was viewed by Mr. Coyne to be informational and to require no response. As to the first call and a third call (referenced in his April 29, 2004 e-mail), Mr. Coyne felt that both calls had been returned and on each occasion the prosecuting attorney was told that Mr. Jackson continued to give no indication of any intention to plead guilty.

### C.

Following completion of Mr. Coyne's testimony, the petitioner was recalled as a witness and was asked about the April 30, 2004 telephone call from his attorney. According to Mr. Jackson, this call dealt solely with arrangements for the May 3, 2004 meeting in Woodbridge, and he had no recollection of any discussion either about the "851 filing" or any possible plea arrangement.

### Analytical Standard

A federal prisoner may file a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States. To justify such relief on the basis of a constitutional error, a petitioner bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994). To justify such relief under § 2255 for a non-constitutional error, a petitioner must establish that there was a

9

fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error of such magnitude that it mounts to a violation of due process. *Hill v. United States,* 368 U.S. 424, 428 (1962).

Such motions are neither a substitute for a direct appeal nor are they a vehicle to relitigate issues which were fully and fairly considered on direct appeal absent an intervening change in the law. *See e.g., Bousley v. United States,* 523 U.S. 614, 621 (1998); *United States v. Frady,* 456 U.S. 152, 167-168 (1982); *Davis v. United States,* 417 U.S. 333, 342 (1974).

Claims under § 2255 alleging the ineffective assistance of counsel in violation of the Constitution's Sixth Amendment are analyzed under the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687-691 (1984). Under the first prong of *Strickland*, the court must assess the competence of the representation in question and whether that representation fell below an objective standard of reasonableness. *Id. at 687. See also Fields v. Attorney Gen. of State of Md.,* 956 F.2$^d$ 1290, 1297-1299 (4th Cir. 1985); *Hutchins v. Garrison,* 724 F.2$^d$ 1425, 1430-1431 (4th Cir. 1983); *Marzullo v. Maryland,* 561 F.2$^d$ 540 (4th Cir. 1977). And "[b]ecause of the difficulties inherent in making [this] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*

Even when the representation in question is found to be professionally unreasonable, the second prong of *Strickland*, obligates a petitioner to demonstrate a probability that the alleged errors worked to his "'*actual* and substantial disadvantage, infecting his entire trial with error of

10

constitutional dimensions.'" *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). In other words, a petitioner asserting an ineffective assistance of counsel claim must demonstrate that there is a reasonable probability the outcome of the proceeding would have differed but for counsel's error. *Strickland* at 698. And a *reasonable probability* is one that is "sufficient to undermine confidence in the outcome."*Id.* at 694.

## Discussion

It is axiomatic that knowledge of the comparative sentence exposure between standing trial and accepting a plea offer is often the determinative point at which a defendant must decide whether to plead guilty or to go to trial. See e.g., *Hammond v. United States*, 528 F.2$^d$ 15 (4th Cir. 1975); *United States v. Day*, 969 F.2$^d$ 39 (3$^d$ Cir. 1992). Thus, an incompetently counseled decision to go to trial, a failure to inform a defendant of a plea offer or a failure to pursue plea negotiations suggested by the circumstances of the case, all can result in denial of an individual's Sixth Amendment right to effective assistance of counsel. *See Turner v. Tennessee*, 858 F.2$^d$ 1201 (6th Cir. 1988) (after conviction and imposition of a life sentence, on collateral review a new plea hearing was held to be the appropriate remedy for constitutionally defective advice of counsel to reject a two-year plea offer), vacated on other grounds, 492 U.S. 902 (1989); *Johnson v. Duckworth*, 793 F.2$^d$ 898 (7th Cir. 1986) (defense counsel has a duty to keep his client apprised of plea issues in a timely manner); *Paters v. United States*, 159 F.3$^d$ 1043 (7th Cir. 1998) (erroneous advice during plea negotiations regarding the maximum sentence faced by the defendant if he proceeded to trial held to require a hearing to determine whether he would have accepted the plea); *United States v. Blaylock*, 20 F.3$^d$ 1458 (9th Cir.

11

1994) (a failure to inform the defendant of a plea offer held to be unreasonable assistance).

In the matter now before the court, the evidence is overwhelming that the petitioner consistently, and without equivocation, protested his innocence and currently continues to maintain that he did not participate in the charged offense. [6] It is equally clear from the evidence that the petitioner never expressed to his attorney any interest or desire to plead guilty. As the Supreme Court noted in *Strickland*, the reasonableness of trial counsel's actions is often determined, or substantially influenced, by the defendant's own statements or actions. *Strickland* at 691.

The petitioner's burden in this matter obligates him to demonstrate a *reasonable probability* that he would have pleaded guilty "but for" the erroneous guilty plea advice allegedly given by his trial attorney. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). That burden required Mr. Jackson to prove facts "sufficient to undermine confidence in the outcome." *United States v. Sanchez*, 984 F.2$^d$ 769, 772 (7th Cir. 1993). He failed to meet that burden.

In making the determination that the assistance provided to the petitioner by his trial counsel was professionally competent and resulted from reasonable professional judgment, all of the facts and circumstances have been considered. It has been kept in mind that trial counsel's function in this case, " as elaborated in prevailing professional norms," was to make the adversarial testing process work

---

[6] As part of any evaluation of the merits, if any, of the Mr. Jackson's claim of constitutionally defective plea-related advice, it must be recognized that his long-standing and unqualified claims of innocence demonstrate a inability on his part to acknowledge under oath as part of a regular Rule 11 colloquy that he was in fact guilty of the charged offense.

12

in this particular case. *See Strickland* at 690. Likewise, it has been kept in mind that there is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.*.

If one assumes, as the petitioner argues, that the evidence and the totality of circumstances are sufficient to undermine the outcome, the plaintiff nevertheless has failed to meet the second prong of the *Strickand* test. Although the petitioner testified to the contrary, the weight of the evidence demonstrates no reasonable probability that he ever intended or contemplated pleading guilty.

As has been often noted in § 2255 cases, courts do not generally view a petitioner's statement, standing alone, as sufficient to establish a reasonable probability. *See e.g., Toro v. Fairman*, 940 F.2$^d$ 1065, 1068 (7th Cir. 1991), cert. denied, 505 U.S. 1223 (1992); *Turner v. Tennessee*, 858 F.2$^d$ 1201, 1206 (1988). This principle is manifestly applicable in the instant matter. The petitioner's testimony was self-serving, subjective, and patently inconsistent with what he told the probation officer in May 2004. It was, by any measure, insufficient to satisfy the *Strickland* requirement of "prejudice.". In addition the failure of the petitioner to present any corroborating testimony from Mr. Wright (the family friend and paralegal) or other evidence is significant. See *Turner* at 1207 (on the basis of corroborating testimony the court found a reasonable probability that defendant would have pleaded guilty but for errors of his trial counsel).

At least impliedly, the petitioner also suggests in this matter that the obvious difference between an enhanced twenty-year sentence and a ten-year sentence supports his contention that any

13

person in his situation would be strongly motivated to enter a guilty plea in order to avoid a significantly more severe minimum sentence. Although the arithmetic underlying this is obvious, it does not equate to persuasive evidence. If it did, after ascertaining the possibility of receiving any non-enhanced sentence of any defendant facing a similar 851 notice would roll the dice at trial and then claim counsel-induced "prejudice" after conviction and imposition of an enhanced sentence.

**Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the evidence and the record, the following formal findings, conclusions and recommendations are submitted:

1. The petitioner failed to satisfy his burden to show that his trial counsel ineffectively assisted him with regard to his plea options;

2. The petitioner failed to satisfy his burden to show that his trial counsel ineffectively assisted him with regard to his not guilty plea;

3. The petitioner failed to demonstrate a reasonable probability that, "but for" his trial counsel's alleged errors, he would not have gone to trial and would have insisted on pleading guilty;

4. The petitioner failed to demonstrate that there is a reasonable probability the outcome of the case against him would have differed "but for" errors by his trial counsel;

5. The petitioner's persistent plea of not guilty was neither involuntary nor the consequence of constitutionally deficient advice of trial counsel;

6. No action of trial counsel subjected the petitioner to any actual or substantial constitutional disadvantage;

14

7. Trial counsel's actions in focusing on trial preparation were reasonable and substantially determined by the petitioner's persistent and unequivocal denials of guilt;

8. Trial counsel's determination not to pursue plea negotiations with counsel for the government was reasonable and substantially determined by the petitioner's persistent and unequivocal denials of guilt;

9. The evidence does not support the contention that trial counsel failed to covey relevant plea information to the petitioner;

10. The petitioner never requested or suggested to his trial counsel that he desired to plead guilty;

11. No reasonable probability was shown that the petitioner ever intended to plead guilty;

12. The relevant actions of trial counsel were the result of reasonable professional judgment;

13. The petitioner was provided objectively reasonable and professionally competent assistance by his trial counsel;

14. The petitioner has failed to establish by credible evidence that either his trial counsel's actions or advice resulted in constitutional prejudice;

15. The petitioner was not denied effective assistance of counsel; and

16. The petitioner is not entitled to relief on this claim.

## Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered GRANTING the respondent's Motion to Dismiss the petitioner's claim of constitutionally cognizable prejudice as a consequence of the plea-related assistance and advice given by his trial counsel, DENYING the

15

petitioner's Motion for relief pursuant to 28 U.S.C. § 2255, and DISMISSING this case from the docket of the court.

**Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit copy of this Report and Recommendation to all counsel of record

DATED: this 20th day of December 2007.

                                            s/ James G. Welsh
                                            United States Magistrate Judge